## Potter v. Langstrath. Lukens's Appeal.

*Deed and agreement of sale—Trust to pay encumbrances—Rights of grantor and grantee—Construction.*

By the terms of an agreement of sale, and deed made in pursuance thereof, the grantee was to give $6,000 for a farm by paying encumbrances entered and to be entered. If the farm was sold the proceeds were to be divided equally between grantor and grantee. The grantee had paid a little over $1,000 under the agreement when the premises were sold by the sheriff to satisfy a judgment. *Held,* upon the distribution of the proceeds of the sale, that the grantee could claim only half of the proceeds after deducting or allowing for the $6,000 of encumbrance he was by his agreement obliged to pay.

*Costs of audit—Decree not excepted to in court below.*

While the costs of audit are properly placed on the party in default, the Supreme Court will not modify the decree in that respect where the question was not raised in the court below.

Argued Feb. 2, 1892.   Appeal, No. 98, July T., 1891, by a judgment creditor, B. F. Lukens, from decree of C. P. Montgomery Co., Oct. T., 1888, No. 70, distributing proceeds of sheriff's sale in suit of Potter v. Langstrath.   Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Claim for payment of judgment out of proceeds of sheriff's sale.

The auditor on distribution, Irving P. Wanger, found the following among other facts : Langstrath owned the farm in 1888 and against it there were a mortgage of $4,000 and numerous judgments, including the one of Potter under which the sheriff's sale was afterwards made.   An agreement, dated Nov. 20, 1888, was made between Langstrath and Patrick Keenan, the essential parts of which were as follows :

"The party of the first part, in consideration of the covenants and agreements hereinafter contained on the part of the said party of the second part to be kept and performed, hath agreed and doth thereby agree to sell and convey unto the said party of the second part, his heirs or assigns, all the land and premises hereinafter mentioned and fully described, for the sum of six thousand dollars, to be as follows : payment of a mortgage of four thousand dollars in favor of John C. Hancock, and such other encumbrances as are now entered against the property or to be entered against the same in Montgomery County, Pa.

"And the said party of the second part agrees with the said party of the first part to purchase the said premises and pay therefor the said sum of six thousand dollars in the manner and at the times hereinafter provided.

"And it is further agreed by and between the said parties, that possession of said premises shall be delivered to the party of the second part, his heirs or assigns, subject to lease made to B. K. Tomlinson and assigned to John C. Hancock, until which time the party of the first part shall be entitled to have and receive the rents, issues and profits thereof.   [Here follows a description of the premises.]

"And as to the payments to be made it is agreed that the said Patrick Keenan is to pay a mortgage of four thousand dollars held and controlled by John C. Hancock, which is recorded at Norristown aforesaid, and such other encumbrances

against the heretofore described property as now entered against the said property, or to be hereafter entered against the said property.  And the said Keenan is to pay all claims that are now in the hands of Henry C. Kline, sheriff of Montgomery county, on or before 2 o'clock, P. M., on the 21st day of November, 1888.  And it is further agreed between the parties to this agreement that the said Thomas Langstrath, his heirs or assigns, shall have the right to sell said property up to the first day of April, 1889, to any party for such sum as he desires, upon the payment of one thousand dollars as a consideration to said Keenan for the moneys he advanced to the said Langstrath, and in addition thereto all the moneys he may have advanced for the said Langstrath in payment of said encumbrances.  And it is further agreed that the said property shall not be sold for a less amount than ten thousand dollars during the period of eight months from the first day of April, 1889. And if the said property is sold after the first day of April, 1889, by either of said parties to this agreement, then the proceeds of such sale is to be applied, first to the payment to said Keenan of all encumbrances he has paid on said property, and balance remaining, after allowing the payment of such encumbrances, shall be divided between said Langstrath and said Keenan, share and share alike.  And said Keenan shall have no right to sell said property from this until the first of April, 1889, without the written consent of Thomas Langstrath.  Should a deed be executed by said Langstrath to said Keenan the said Keenan is to reconvey said property to such party as said Langstrath may sell to between this and April 1, 1889, upon payment as aforesaid."

On Nov. 21, 1888, a deed was executed to Keenan, reciting that it was subject to the conditions of the agreement.  Under this deed Keenan went into possession.  On May 3, 1889, two judgments were entered against Langstrath, of which appellant's judgment was one.  Keenan paid a little over $1,000 under the terms of the agreement.

Before the auditor, Keenan's heirs claimed as absolute owners of the farm the entire fund after payment of Potter's judgment.  Appellant claimed that Keenan was simply a mortgagee of the farm or a trustee under his deed and that his judgment came within the terms of the agreement recited in Keenan's

deed as an "encumbrance to be entered against the property." Langstrath contended that the deed to Keenan was a mortgage and that, after repayment of Keenan's advances and the judgments, he was entitled to the surplus if any.

The auditor, holding that the deed to Keenan could not be reduced to a mortgage because it was a sale of the premises and because the act June 8, 1881, forbids all defeasances not recorded, held that, under the agreement, Langstrath had a right to half the surplus after payment of encumbrances existing Nov. 20, 1888, the date of the agreement. He therefore divided the surplus between Langstrath and the heirs of Keenan and gave to appellant's judgment its interest in Langstrath's half only of the surplus, and allowed interest on encumbrances from date of sheriff's sale to time of distribution.

Exceptions filed by appellant alleged that the auditor erred, among other things, (4) in finding appellant's judgment only entitled to participate in the distribution to the extent of Langstrath's interest; (5) in allowing interest on encumbrances from date of sheriff's sale to distribution, and in the same exception objecting to the auditor's fees and other items.

The court dismissed exceptions in an opinion by WEAND, J.

*Errors assigned* were, among others, (4, 5) dismissal of exceptions, quoting them as above; (7) confirming auditor's allowance of interest on encumbrances from sheriff's sale to distribution; (8) in confirming auditor's finding as to counsel fees and other expenses, not excepted to in the court below.

*N. H. Larzelere, M. M. Gibson* with him, for appellant.— Before the act June 8, 1881, the agreement and deed together would have constituted a mortgage: Myer's Ap., 42 Pa. 518; Sweetzer's Ap., 71 Pa. 264; Danzeisen's Ap., 73 Pa. 65; Pearce v. Wilson, 111 Pa. 14; Mellon v. Lemmon, 111 Pa. 56; Helfenstein's Estate, 135 Pa. 293.

The act of 1881 does not apply because this is not a deed regular and absolute on its face. Keenan, the grantee in the deed, could not convey his title until April 1, 1889, and there were conditions written into the deed of various kinds; this is not forbidden by the act June 8, 1881.

*Sheldon Potter*, with him *Leoni Melick* and *J. P. Hale Jenkins.*—This was an absolute deed which cannot be turned into a mortgage except (1) By debt surviving the conveyance: Todd v. Campbell, 32 Pa. 250; Null v. Fries, 110 Pa. 521. A conveyance under encumbrances creates a covenant on grantee's part to indemnify the grantor: Davis's Ap., 89 Pa. 272; Taylor v. Meyer, 93 Pa. 42; Green v. Rick, 121 Pa. 130. (2) Agreement of defeasance: Pa. Co. v. Austin, 42 Pa. 257; Payne's Admr. v. Patterson's Admr., 77 Pa. 134; Pancake v. Cauffman, 114 Pa. 113; Pearson v. Sharp, 115 Pa. 254; Lance's Ap., 112 Pa. 456. (3) An agreement to convey to one other than the grantor is not a defeasance: Pa. Co. v. Austin, 42 Pa. 257; Payne's Admr. v. Patterson's Admrs., 77 Pa. 134. A mere option to repurchase before a certain time, the encumbrances having been satisfied, does not constitute a mortgage: Null v. Fries, 110 Pa. 521.

That the grantor did not retain possession is a circumstance of weight against the idea of mortgage: Todd v. Campbell, 32 Pa. 250. That the grantee was to sell the property and the grantor was to receive something out of the proceeds instead of indicating an intent to mortgage is opposed to such construction. Todd v. Campbell, 32 Pa. 250; Lance's Ap., 112 Pa. 456.

Unless the defeasance be made at the time the deed was made and is duly recorded, a deed absolute and regular upon its face cannot thereby be reduced to a mortgage. Act of June 8, 1881, P. L. 84; Feltz's Ap., 1 Mona. 235. The act of June 8, 1881, P. L. 84, is not a recording act. Its intention was to *abolish utterly* the oral defeasance. Sankey v. Hawley, 118 Pa. 30; Molly v. Ulrich, 133 Pa. 41.

The agreement, though admitted, would not reduce the deed to a mortgage: Murray v. McCarthy, 18 W. N. 504.

The specifications of error are not in accordance with rule 22 of Supreme Court.

OPINION BY MR. JUSTICE McCOLLUM, October 3, 1892.

The property described in the agreement of November 20, 1888, was valued by the parties thereto at ten thousand dollars. This sufficiently appears in their stipulation that it should not be sold for less than that sum " during the period of eight

months from the first day of April, 1889." Their obvious pur-
pose was to prevent a sacrifice of the property by a sale on the
incumbrances against it, and to afford Langstrath an opportu-
nity to dispose of it advantageously. The agreement was in
form a sale, subject to certain restrictions and stipulations which
carefully defined the rights and obligations of the parties, and
may be summarized as follows: Langstrath agreed to sell and
convey the property to Keenan for six thousand dollars to be
applied in discharge of encumbrances entered and to be entered
against it, and Keenan agreed to pay that sum in the manner
stated. Langstrath was to have the exclusive right to sell the
property at any time prior to April 1, 1889, on paying to
Keenan one thousand dollars and his expenditures in pursuance
of the agreement, in which case Keenan was to transfer the
property to the purchaser. On a sale of the property by either
party after that time Keenan was to receive from the proceeds
the amount paid by him in discharge of the encumbrances and
the balance was to be divided between them "share and share
alike."

On the 21st of November, 1888, a deed was made to Keenan
expressly subject to the terms and conditions of the agreement
and the encumbrances mentioned therein. This deed did not
release either party from his obligations under the agreement
nor deprive him of any right conferred by its provisions. So
far as the parties to the agreement were concerned their rights
and duties under it remained as before.

Keenan failed to comply with his covenant to pay six thou-
sand dollars in discharge of encumbrances, and only paid a trifle
more than one sixth of that sum. In consequence of his de-
fault the property was sold on one of the encumbrances pro-
vided for in the agreement, and the proceeds of the sale were
brought into court for distribution. It was claimed by Lang-
strath and the appellant, first, that the agreement and convey-
ance constituted a mortgage to secure Keenan for advances of
money to be made by him in payment of the encumbrances on
the property, and, second, if not a mortgage, a trust for the
purposes specified in the agreement. The learned judge of
the court below overruled their first claim and sustained their
second, and in these rulings we fail to discover any error. It
was his opinion however that one half of the fund remaining

after paying the encumbrances entered before the agreement was made should be awarded to the appellant, and the other half thereof to Keenan's heirs, although the amount of such encumbrances was considerably less than the sum Keenan agreed to pay on account of "encumbrances entered and to be entered" against the property; and a decree was made in accordance therewith. This we think was error resulting from a misconception of the agreement. The undertaking of Keenan to pay six thousand dollars in the manner already stated was clear and unconditional, and it was not impaired by the provision in relation to a division of the proceeds of a sale after paying thereout the encumbrances. These were estimated at the sum which Keenan was bound to pay, and this sum was the measure of his liability to Langstrath. It was known to the parties at the time of their agreement that the encumbrances on the property then existing were not equal to this sum, yet they bargained for the payment of it. If they intended that Keenan's liability should be measured by such encumbrances they could easily have said so, and they certainly would not have provided for the payment by him of other claims. We think therefore the equitable and true construction of the agreement is that the parties intended a division of the proceeds of sale in excess of the sum Keenan was to pay, and that the agreement in this particular was founded on the assumption of his compliance with his covenants. If Keenan had paid encumbrances to the amount of six thousand dollars and then sold the property he would have the right to receive from the proceeds of the sale the amount so paid, and one half the balance. This is what performance of his agreement would have given him. It is an unsound construction of that agreement which rewards him for his default, and enables him or his heirs to divide with the appellant a portion of the sum applicable to Langstrath's debts. It is clear that to give effect to the manifest intention of the parties there can be no division of the proceeds of the sale until the amount Keenan was to pay is deducted therefrom. The judgments on which the claim of the appellant to share in the fund is founded are the only encumbrances entered after the agreement was made, and the difference between the amount of the prior liens and the sum Keenan was to pay, together with one half the balance of the proceeds of the sale is applicable to them.

As the costs of audit are a result of Keenan's default, it seems to us that an order for their payment out of the other half of that balance would not be inequitable, but as this question was not raised in the court below, or here, we do not feel at liberty to change the decree in this respect.

It was error to allow interest on the judgments after the day of sale : Siter's Appeal, 26 Pa. 178.

The specifications of error which complain of rulings by the auditor, not excepted to in the court below, will not be considered, nor the specifications which are in violation of rule 22 of this court.  The specifications which are in conformity with established practice and complain of rulings in conflict with this opinion are sustained and all other specifications are dismissed.

Decree reversed and record remitted to the court below with direction to enter a decree in accordance with this opinion, the cost of this appeal to be paid by the appellee.