In re ALLERT.

(District Court, W. D. New York. March 21, 1908. On Rehearing, August 26, 1908.)

No. 562.

1. BANKRUPTCY (§ 347*)—MORTGAGES—SALE OF MORTGAGED PROPERTY BY TRUSTEE—RIGHT OF MORTGAGEE TO FULL PAYMENT.

The holder of a first mortgage on real estate of a bankrupt, the validity of which is not disputed, is entitled to payment in full from the proceeds of the property sold by the trustee, with interest to the time of payment, and cannot be required to pay any portion of the general expenses of the bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 538; Dec. Dig. § 347.*]

2. BANKRUPTCY (§ 482*)—FEES—ALLOWANCE OF ATTORNEY'S FEES.

The action of a referee in allowing fees to counsel for a second mortgagee and for unsecured creditors from the proceeds of mortgaged property reversed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

3. BANKRUPTCY (§ 228*)—REFEREES—REVIEW OF PROCEEDINGS BY JUDGE.

The allowance by a referee in bankruptcy of fees to himself is reviewable by the court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 228.*]

In Bankruptcy. In the matter of Rudolph Allert, bankrupt. On review of orders of referee. Reversed in part.

George G. Reynolds, for petitioner.
Roswell R. Moss, pro se.
Charles Marvin, pro se.
Herendeen & Mandeville, pro se.

HAZEL, District Judge. This is a petition for review by the holder of the first mortgage lien upon the real estate of the bankrupt. The mortgage was given to secure $7,000, with 5 per cent. interest per annum, and covered about three-fourths of the bankrupt's estate, which was sold by order of the bankruptcy court for $20,150. In distributing the trust fund, the referee did not allow interest on the mortgage to the date of his final report, on the ground that, as the fund was not enough to pay all the secured and unsecured creditors in full, it was proper, under the circumstances of the case, to pay out of the amount realized on the sale of the real and personal property, first, the expenses and allowances of administration; second, priority creditors; and, third, secured creditors. In computing the amount of the petitioner's lien, he allowed interest to October 17, 1901, the date of the approval of the sale. Subsequently, on December 30, 1905, the final decree distributing the bankrupt estate was entered, and the petitioner now claims to be entitled to interest to the date of such decree, in the amount of $654.11.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I think the referee erred in not paying in full the principal and ac-·crued interest to the date of the final decree. Taylor v. Wing, 84 N. Y. 471; Brandenburg on Bankruptcy, § 1195. The validity of the mortgage was not in issue, and, accordingly, the lienor should not be obliged to pay any portion of the expenses of the bankruptcy proceedings. Her lien was not affected by the bankrupt act (Act July 1, 1898, c. 541, § 67d, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]). She had the right to institute foreclosure proceedings in the state court, but, instead of so doing, properly elected to invoke the simpler and supposedly less expensive remedy of enforcing her lien in the bankruptcy court. The trustee in bankruptcy, as said by Judge Holt in Re Anders Push Button Telephone Co., 136 Fed. 995, took the estate subject to the lien. In that case the court held that under the bankrupt act a creditor having a valid lien was not obliged to pay commissions on the amount realized thereon to the trustee and to the ref-·eree, although the property was sold by the trustee. No question is raised here as to the right of the referee to make an allowance of ·commissions to the trustee and to himself out of the proceeds of sale, or to deduct expenses for advertising the sale of the property free from liens, or, indeed, to make an allowance to the attorneys for the bankrupt and for the trustee, because of the claimed additional services performed by them in selling the mortgaged property free and clear of incumbrances.

The second ground of error assigned by the petitioner is that the trustee, pursuant to order of the court, has unlawfully and unneces-· sarily paid out various sums of money as fees and charges to attorneys for creditors. The record does not disclose that anything was done in this proceeding by the attorneys for creditors which specially resulted to the benefit of the mortgagee. After careful reading of the proceedings before the referee, and consideration of the arguments ·contained in the briefs of counsel, I am constrained to the conclusion that the objection of the petitioner is well founded. The proceeding was devoid of any complexity, or the usual intricacies of practice, or ·even the opposing contentions of counsel, which not infrequently confront bankruptcy courts. There were no issues specially referred to the referee under district rule 29, and, strictly considered, it is doubtful whether he is entitled to an additional allowance as special master. But, as he appears to have performed services by consent of interested parties outside of his prescribed duties as referee, which are usually performed by a special master, and also in advising with the trustee and counsel regarding the best methods of ·continuing and conducting the business until such time as a purchaser could be found, I think it would not be inequitable to allow him an additional sum, as hereinafter ·computed, for such services performed. In re Hart & Co., 18 Am. Bankr. Rep. 137.

No objection is made to the amounts of compensation to attorneys for the trustee and the bankrupt, nor to the allowances to the trustee and appraisers, though such amounts, unexplained, seem excessive·; but it is contended by the petitioner that it was improper to make an allowance out of the bankrupt estate to the attorney for the holder of

the second mortgage and to the attorneys for certain unsecured creditors. This objection is not without merit. The bankrupt act very properly does not allow compensation to attorneys for creditors out of the assets of the estate. Collier on Bankruptcy (6th Ed.) p. 499; In re Goldville Mfg. Co. (D. C.) 118 Fed. 892. I have searched the record in vain to ascertain if in any way the services rendered in this proceeding by counsel for creditors inured to the value of the bankrupt estate. Such services undoubtedly were beneficial to their clients; but why the bankrupt estate should remunerate them is difficult to understand. It should remain uppermost in the minds of litigants and attorneys practicing in the bankruptcy courts that it is the policy of the bankrupt act to administer estates with the strictest economy, to the end that fees, costs, and charges should be reduced to the lowest minimum. That this object has been achieved in the case under consideration is not without doubt. Upon this subject it may not be inappropriate to quote from the opinion of the Circuit Court of Appeals in Re Curtis, 100 Fed. 784, 41 C. C. A. 59, where it is said:

"The present act, so far as it specifies the amount of fees of officers whose services may be required in execution of the law, fixes them at a low figure, possibly much lower than is compensation for the service; but it is not for us, for that reason, to disregard the law, or seek to thwart the design of Congress, however inadequate we may think the compensation allowed."

The amounts of $200 allowed to the attorney for the second mortgagee, and of $250 allowed to attorneys for certain creditors, are disallowed; and, having been distributed by the trustee, these amounts, together with $204.11, to be repaid by the referee out of the sum of $400 retained for services, as appears by the report of the trustee, which sums in the aggregate amount to $654.11, the amount which the petitioner is entitled to receive as interest, must be refunded within 30 days, to enable him to pay the lien of the first mortgage, together with interest at 5 per cent. per annum to the date of the final decree.

So ordered.

## On Rehearing.

The errors in the amount of interest due to the first mortgagee and in the amount allowed Mr. Marvin, attorney for the second mortgagee, may be corrected in the order to be entered. But the amount of $200, instead of $204.11, out of the total sum retained by the referee for his services, and the full amount paid to Mr. Marvin for services as attorney for the second mortgagee, are disallowed, and must be refunded to the trustee for distribution. The trustee, whose present residence is unknown, may be removed, if it is thought necessary, under General Order 13 (89 Fed. vii, 32 C. C. A. xvii). See, also, section 2, subd. 17, Bankr. Act.

It is insisted on this application that the trustee and his attorneys also received excessive allowances, which under the circumstances should be disallowed, to the end that the deficiency in the claim of the first mortgagee may be paid proportionately. As the various amounts for trustee's fees and expenses, including attorney's charges, were distributed in 1901 and 1902, six years ago, and the final decree of the referee not filed until December 30, 1905, an examination of the serv-

ices rendered with the object of diminishing the allowances and recovering back any excess probably would not be successful. Moreover, upon the papers before me, it is not believed possible to determine that such allowances to counsel made by the referee were improper or excessive.

It is also claimed that the parties appearing before the referee consented to the allowance to Mr. Marvin in consideration of the non-foreclosure of the mortgage owned by his client and her consent that the property be sold free and clear of such lien, and, further, that such allowance was without objection by the petitioning creditor. The reply to this contention is that the referee had power to sell the property free and clear of liens without the consent of such mortgagee; the requirement being in such case that the liens be transferred to the proceeds of the sale. Brandenburg on Bankruptcy, § 1195, and cases cited. That no formal objection to the allowance was made by the petitioning creditor, a prior lienor, is without special force, in view of her demand before the referee for full payment of her secured debt and interest.

The referee on this motion submits that the former decision rendered by me, disallowing a portion of his fees and charges, has the effect of holding him personally liable for a judicial error. Such, however, is not the fact. The compensation of referees in bankruptcy is fixed by the bankrupt act, and the trustee's authority to pay such allowances, even prior to the amendment of 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1024]), in the absence of a reference as special master, was questionable, and without doubt the allowances of fees by a referee to himself is reviewable. In re Mammoth Pine Lumber Co. (D. C.) 116 Fed. 738.

The order may be entered disallowing the allowance to Charles Marvin, attorney for secured creditor, and the allowance made by the referee to himself, except that the order may provide that the referee is authorized to retain the sum of $200 for and on account of special services performed by him as indicated in my first decision herein.

(It appears that Attorneys Herendeen & Mandeville have refunded the amount allowed them as attorneys for creditors.)