Constitution of the United States do not apply. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Youngblood v. United States (C. C. A.) 266 F. 795; Rowan v. United States (C. C. A.) 281 F. 137; Kanellos v. United States (C. C. A.) 282 F. 461; Timonen v. United States (C. C. A.) 286 F. 935; Thomas v. United States (C. C. A.) 290 F. 133; Coates v. United States (C. C. A.) 290 F. 134; Robinson v. United States (C. C. A.) 292 F. 683; Lerskov v. United States (C. C. A.) 4 F.(2d) 540.

(4) Whether the evidence was sufficient to sustain the verdict. The main testimony in the case was by one of the officers who made the arrest and seizure, and was to the effect that after the arrest he took from one of defendant's pockets a flask containing whisky. There was no evidence contradicting this. The suggestion of counsel that defendant might not have known of the presence of this bottle of whisky in his pocket does not merit serious consideration.

Judgment affirmed.

---

## In re LANSLEY.

### Petition of LEWIS.

(Circuit Court of Appeals, Second Circuit. June 1, 1925.)

No. 380.

**Bankruptcy ⟨⟩⟩293(1)—Court held without jurisdiction to bring person from another state to answer citation for contempt.**

The admission by a witness that he holds title to real estate, situated in another state, for bankrupt, and has no interest in it himself *held* not to give the court jurisdiction to bring him from the other state to answer to a citation for contempt for refusing to convey the property to the trustee; the proper practice being to apply for ancillary summary process in the district of his residence.

Petition to Revise Order of the District Court of the United States for the Eastern District of New York.

In the matter of William J. Lansley, bankrupt. Petition by Oscar A. Lewis, trustee, to revise order of District Court. Affirmed.

One Smith, a resident of New Jersey, appeared as a witness in this proceeding and admitted that he held title to certain New Jersey real estate for the bankrupt; he had no real interest of his own. He professed willingness to execute a deed of the property to the trustee in bankruptcy. He then left New York, returned to New Jersey, and refused or neglected to carry out his promise. Thereupon order to show cause was granted below, calling upon Smith to give reasons why he should not be punished for contempt. The order was served in New Jersey. On the return day Smith did not appear, and the court below refused to take jurisdiction of the matter, whereupon the trustee took this proceeding.

Bernard Hershkopf and Saul S. Myers, both of New York City, for petitioner.

Reynolds, Richards, McCutcheon & Logan, of New York City (Royal F. Shepard, of New York City, of counsel), as amicus curiæ.

Before HOUGH, MANTON, and HAND, Circuit Judges.

PER CURIAM. We agree with the court below that, since there was no property in the custody of the court affected by the apparent legal title outstanding in Smith, service of the show cause order in New Jersey gave no jurisdiction to the court for the Eastern district of New York. Remington (3d Ed.) § 34, vol. 1, p. 64 et seq.

The proper practice would have been to apply for ancillary summary process in the New Jersey district. Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969.

Order affirmed.

---

## In re COOK.

(District Court, D. Massachusetts. December 4, 1924.)

No. 33489.

**Bankruptcy ⟨⟩⟩262(3)—Sale of property free of mortgage lien carries all rights of a sale on foreclosure of the mortgage.**

Under G. L. Mass. c. 244, § 16, which provides that, on foreclosure of a mortgage in which a wife has released her dower, the sale shall bear all right of dower, where a mortgage made by a bankrupt contains a release of dower by his wife, the bankruptcy court may order a sale of the property free of the lien of the mortgage and all dower right.

In Bankruptcy. In the matter of Washington Cook, bankrupt. On review of order of referee. Affirmed.

White & Barnes, of Boston, Mass., for receiver.

Arthur P. Crosby, of Boston, Mass., for mortgagee.

LOWELL, District Judge. This is a petition to review the order of Mr. Referee Hutchings that a certain parcel of real estate, belonging to the bankrupt and subject to two mortgages, should be sold free and clear from all liens except that of the first mortgage. The second mortgage contained a release of dower by the bankrupt's wife. The second mortgagee contends that the bankruptcy court has no power to free the estate from the lien of the wife's dower, but does not contest its power to free the estate from any lien which might be imposed by the second mortgage.

The decision of the question depends on the law of Massachusetts. The sixteenth section of chapter 244 of the General Laws provides that, on the foreclosure of a mortgage in which a wife has released her dower, the sale shall bar all right of dower. While a sale by the bankruptcy court is not a foreclosure, it has been held that such a sale accomplishes the same result as a foreclosure sale. Gantt v. Jones (C. C. A.) 272 F. 117.

While that decision was given by the Court of Appeals of the Fourth Circuit, where the provisions relating to mortgages are different from those in Massachusetts, it seems to me that it is an authority in favor of the court's power in this case. It is to be noted that the wife herself does not object, but that the objection is made by the second mortgagee. Under these circumstances I affirm the order of the referee.

---

## W. R. GRACE & CO. v. TOYO KISEN KABUSHIKI KAISHA.

(District Court, N. D. California, S. D. September 15, 1925.)

No. 17363.

**1. Shipping ⬩125—General liberty clause to be given effect, when not conflicting with law or real intent of contract.**

General liberty clause in bill of lading is to be given effect, in so far as not in conflict with Harter Act (Comp. St. §§ 8029–8035), or general purpose and policy of law, or real intent of contract of shipment; but reserved general liberty of departure from route of contractual voyage will justify only such deviations from such route as are consistent with main commercial purpose of the affreightment contract, propriety of any particular deviation being a question of fact in each case, depending on surrounding circumstances.

**2. Shipping ⬩125—In view of liberty clause, held no deviation herein of which shipper might complain.**

In view of liberty clause in bill of lading of nitrate shipped from Chile to Honolulu by ship "bound for Honolulu," though the "usual and customary" route of carrier's ships had been up to San Francisco, and from there direct to Honolulu, yet during the last year or two before the shipment some of them having first gone to Portland, to complete cargo, and carrier having, before the nitrate was loaded and bill of lading was issued, notified shipper that the ship in question would do so, and shipper, who was also carrier's agent, having as such agent loaded the nitrate, so that the ship could proceed to Portland and take on lumber, *held*, there was no deviation of which shipper could complain.

In Admiralty. Libel by W. R. Grace & Co. against Toyo Kisen Kabushiki Kaisha. Decree for respondent.

Harold M. Sawyer and Alfred T. Cluff, both of San Francisco, Cal., for libelant.

Thomas B. Dozier, Dozier & Dozier, and Dozier, Kimball & Dozier, all of San Francisco, Cal., for respondent.

PARTRIDGE, District Judge. Libelant shipped 2,500 tons of sodium nitrate from Iquique and Antofagasta to Honolulu, on the Japanese steamer Tokuyo Maru. The ship proceeded north to San Francisco, via various ports, and thence to Portland, where she completed cargo by loading lumber. Immediately after leaving Portland, she was destroyed by fire, and all cargo lost. The nitrate, which is alleged to be of the value of $250,000, was insured by various underwriters, in the sum of about $190,000. This insurance was paid to libelant, so that the libel is prosecuted on behalf of the underwriters to the amount of the insurance paid, and the balance for the benefit of libelant.

The basis of the libel is a deviation. The direct route from the nitrate ports to Honolulu, of course, is far away from the actual voyage of the vessel; but it is not claimed that she should have taken the direct route. On the contrary, libelant bases its claim upon the proposition that the "usual and customary" route from nitrate ports to Honolulu was northerly to San Francisco, and thence directly · to the port of discharge. Hence it is urged that the extension of the voyage northerly to Portland was a deviation.

Libelant is a dealer in the markets of the world on a large scale. It is also engaged in the shipping business, and has branches, agencies, and subsidiaries in many lands. Admittedly, it has a "steamship depart-